[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Two well educated, attractive, articulate young people meet, live together for a short time, and then marry. Five years later, after the birth of one child and the accumulation of some 18 million dollars of assets, the marriage is on the rocks and a divorce action is filed. Now the court must decide what is in the best interests of the minor child and how to divide the riches. The task is complicated by the fact that both parties are well qualified to parent their child. A further complication is the fact the Husband had substantial assets at the time of the marriage which, due to his extraordinary skill and good fortune, have grown substantially.
The parties first met in early 1991 and after a 22 month courtship were married on November 20, 1993, a total of five and one-half years. It was the first marriage for both. By complaint dated May 4, 1998, the Husband instituted this action claiming a dissolution of marriage, custody, an assignment of the marital residence, a property division, and other relief. The Wife did not file an Answer and Cross-Complaint until May 24, 1999 which was permitted by the court over the Husband's objection. In the Cross-Complaint she claims a dissolution of marriage, joint legal custody, an equitable distribution of assets, support, alimony, counsel and expert witness fees, and other relief. Numerous pendente lite motions were filed by both parties, counsel for the minor child was appointed, and a court ordered custody, visitation, and relocation evaluation was generated by the Family Division. Ultimately, the matter was ably presented by all counsel over 8 days of trial during which the court heard many witnesses and reviewed over 65 Exhibits.
One child issue of the marriage, Patrick McAuley, was born to the Wife on September 26, 1995 and is in good health. Despite considerable counseling, mediation and other assistance, the parties were unable to agree on primary residence but, to their credit, did agree on joint legal custody. The court listened to protracted testimony on the residence issue and concludes that both parties are fit parents to have primary residential care. A memorialization of the claims and criticisms of each party would CT Page 6605 be of no value. Patrick is fortunate in having parents who love him, care for him, and are able to provide for all of life's necessities. Despite their attributes as parents, there is intense competition between them which, if not moderated, will have a deleterious affect on the child. It is imperative that they learn how to develop better lines of communication in the future if he is to be spared this acrimony.
It is in Patrick's best interest that he continue to enjoy the society of both parents without having to travel long distances, especially during his early formative years. As a result, the court fully endorses the stated intentions of both parties to continue to reside in Greenwich. At an earlier stage of these proceedings, the Wife manifested a desire to move to New Jersey with the child. Such a move would be contrary to his best interests, and had it been pursued would most likely have produced a different result than that hereafter described. There is no discernible reason why these two parents cannot or should not live within the same locale so that their child can be spared the problems created by long distance parenthood.
The Husband is 37 years of age, in good health, and well educated. A graduate with high honors from the University of Illinois, he subsequently obtained a Masters in Business Administration from Northwestern University, also with high honors. He is a Chartered Financial Analyst and has passed the test to be a Certified Public Accountant. At the time of the marriage, he worked as managing director for Tiger Management, an investment company, earning one to five million dollars per year. He left Tiger in 1997 to become a private investor of his own funds, a position in which he earns as much as he did at Tiger. In 1998 his gross income was $4,741,324. There is no reason to doubt that his earning capacity will continue at the same rate as in the recent past.
The Wife is 33 years of age, in good health, and also well educated. She has a Bachelors Degree from Montclaire State University, a Masters in Business Administration from Fairleigh Dickinson University, and a certificate from the New York School of Design. Prior to her marriage, she was employed in an administrative capacity with the Prudential Insurance Company earning approximately $55,000 per year. Since her marriage, by agreement of the parties, she has been a homemaker. She stated plans to return to work in September, 2000, after Patrick is enrolled in school full time. It appears to the court that she CT Page 6606 has the capacity to earn at least what she was earning at the time of her marriage, if not substantially more.
At the time of the marriage, the Husband had net assets totaling $2,876,710 (see Plaintiffs Exhibit K). There was testimony from Elda Doray, an Ernst Young CPA who specializes in the handling of high net worth clients, that the Husband's net assets at the time of the marriage increased to $10,296,819 as of December 31, 1998 (see Plaintiffs Exhibit L). At the time of the marriage, the Wife had few assets, principally an IRA which today has a value of $9,554 and an expected bonus from her employer of $10,000.
Total assets of the parties are as follows (H designates asset owned by Husband, W designates asset owned by Wife and J designates asset jointly owned):
 Residence equity (J) $823,528 Chase Manhattan checking (H) 9,000 Putnam Trust checking (W) 3,100 Goldman Sachs brokerage (H) 16,548,151 Goldman Sachs IRA (H) 176,278 Goldman Sachs IRA (W) 9,554 Istanbul Food Group (H) 125,000 Dunkin Donuts Food Group (H) 125,000 1993 Honda (H) 3,000 1998 Jeep (W) 25,000 Household Furnishings (J) 100,000 Antiques (J) 20,000 Jewelry (W) 70,803
Total Assets $18,038,414
It is significant to note that in the event of a liquidation of the Husband's stock portfolio there would most likely be substantial tax consequences effectively reducing the net asset value shown above. Also, a total liquidation might have a depressive effect on some of the securities, further reducing the net asset value. Liabilities of the parties, not especially noteworthy, were principally counsel fees and will be dealt with separately in the orders to be entered.
The parties enjoyed a station in life commensurate with their ages, education, income and asset situation. It included trips abroad, expensive vacations, theater, sporting events, clubs, CT Page 6607 purchases of antiques, jewelry and other indicia of affluence. Their relative contributions to the acquisition, appreciation, and preservation of value of the acquired assets would appear to be somewhat different. While it is true that parties contribute in different ways in the shared enterprise that is a marriage, here the Husband clearly came into the marriage with substantial assets, as well as a remarkable skill which enabled him to substantially increase those assets. On the other hand, the Wife came into this short marriage with relatively few financial assets and her contributions were of a non-monetary nature. The Husband would appear to have a greater opportunity to accumulate assets and income in the future than would the Wife.
It would serve no useful purpose to chronicle the causes for the breakdown of the marriage which is clearly irretrievable. The Husband claimed that the principle cause for the breakdown was the Wife's involvement with another man. Incredulously, he testified that he was not responsible in any way for the marital problems. This myopic view was not consistent with the facts. The Wife claimed that there were problems for some time including the Husband's rigid personality, all consuming work habits, a lack of intimacy and companionship. Her relationship with another man certainly did not help the marriage and was hardly consistent with the role of a young mother. It is clear that the relationship was the catalyst that led to the breakdown. Marriage and personal counseling did not help either party as they plunged inexorably forward with the divorce. Both appeared to have emotionally suffered from the protracted proceedings. Unfortunately, the evidence indicated that their child Patrick suffered as well.
The court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
DISSOLUTION OF MARRIAGE
The marriage is dissolved on the grounds of an irretrievable breakdown.
CUSTODY AND VISITATION
CT Page 6608
The parties shall have joint legal custody of the minor child and a sharing of physical custody as described herein. It is anticipated that both parents will reside within the Town of Greenwich. Primary residence of the child shall be with the Wife and is not to be changed without written agreement of the parties or further order of the court. Decisions concerning religion shall be discussed between the parties before being made but in the event of a dispute the Husband's position shall be controlling. Health care, education and other major decisions shall be by mutual agreement. During the periods of time that the child shall be with the Husband or Wife, he or she shall have the day-to-day responsibility for the child's care, guidance, well-being and upbringing.
The parenting plan shall be on a four week cycle with the Husband's access as follows:
1. WEEK ONE: Beginning Friday at 9 a.m. (or after school when applicable) until Monday morning when the Husband shall bring the child to school. If there is no school, until 7 p. m. on Monday when the child shall be returned to the Wife's residence;
2. WEEK TWO: Beginning Friday at 9 a.m. (or after school where applicable) until Saturday at 7 p. m.;
3. WEEK THREE: Repeat WEEK ONE;
4. WEEK FOUR: Beginning Saturday at 7 p. m. until Sunday at 7 p. m. (until Monday at 7 p. m. if no school).
Each parent shall have four (4) full weeks with the child during the summer recess, with no more than two (2) weeks to be taken consecutively without the written consent of both parties. In even numbered years the Husband shall have the first choice which he shall make in writing to the Wife by the first of May. In odd numbered years the Wife shall have the first choice which she shall make in writing to the Husband by the first of May.
The parties shall alternate Christmas Eve, Christmas Day, Easter, and Fourth of July holidays with the Husband having the responsibility of taking the child to Mass. on the religious occasions. School vacations are also to be alternated. CT Page 6609
Father's Day shall be spent with the Husband and Mother's Day with the Wife from 10 a.m. to 7 p. m. regardless of the weekend schedule. The parties shall also have the child on their respective birthdays and shall share the child's birthday each year.
The parties shall have reasonable access to the child while he is with the other party, including free access by mail and free access by telephone and B mail during reasonable hours of the day and evening. The minor child shall be permitted to telephone either parent at any time.
The parties shall exert every reasonable effort to maintain free access and unhampered contact between the child and each of the parties and the other party. Neither party shall do anything which may estrange the child from the other party or injure the opinion of the child as to the child's mother or father nor act in such a way as to hamper the free and natural development of the child's love and respect for the other party.
The parties shall confer and endeavor to agree with each other on all important matters pertaining to the child's health, education, welfare and upbringing, with a view to arriving at a harmonious policy calculated to promote the best interests of the child. Each party shall take into consideration the need of the other party to be informed as to the child's whereabouts.
Each of the parties will immediately furnish to the other copies of any reports from third parties concerning the health, education or welfare of the child.
All future and necessary communications between the parents concerning changes in the visitation schedule shall occur solely between the parents and shall not directly involve the child.
For a period of nine months, the parties shall participate in monthly counseling sessions with a mutually agreeable counselor,. cost to be equally shared, for the purpose of developing better communication skills when dealing with parental issues. In the event the parties are unable to agree on a counselor they are to return to court for a determination of the issue.
In the event of an appeal, the custodial and visitation orders described herein shall apply. CT Page 6610
CHILD SUPPORT
The Husband shall pay to the Wife as child support the sum of four thousand dollars ($4,000) per month commencing July 1, 1999. Said child support shall continue until the child reaches the age of 18 years, unless still enrolled in high school, in which case support shall continue until graduation but in no event longer than age 19 years. The parties shall equally share the cost of any private school education.
ALIMONY
The Husband, during his lifetime, and until the death, remarriage, or cohabitation of the Wife, shall pay to her the sum of ten thousand dollars ($10,000) per month as alimony. Cohabitation shall be as defined in Conn. Gen. Stat. Sec.46b-86(b). The payment shall commence on July 1, 1999 and shall continue until June 30, 2002 at which time it shall terminate and be nonmodifiable as to term.
LIFE INSURANCE
The Husband shall maintain five hundred thousand dollars ($500,000) of life insurance insuring his life, naming the minor child, or a reasonable trust for his benefit, beneficiary. Upon reasonable request, he shall furnish the Wife with satisfactory evidence that he is properly insured and the terms and conditions of any trust. This order shall remain subject to modification by either party.
MEDICAL INSURANCE
The Husband shall maintain medical and hospitalization insurance reasonably equivalent to what he now has in force for the benefit of the minor child. All un-reimbursed medical and dental expenses incurred by the child shall be the equal responsibility of the parties.
REAL ESTATE
The Husband shall quit claim to the Wife all of his right, title, and interest in the marital residence located at 22 Wyngate Road, Greenwich, Connecticut, subject to the outstanding mortgage which the Wife shall assume and save the Husband harmless from any and all claims regarding same. The Husband CT Page 6611 shall vacate said residence by August 1, 1999. In the event of an appeal, the order to vacate shall remain if effect.
PERSONAL PROPERTY
The parties have heretofore divided all of their furniture and personal belongings with the exception of one antique clock which is awarded to the Husband. The Husband's share of the furnishings is estimated to be valued at fifteen thousand dollars ($15,000) and the Wife's share eighty-five thousand dollars ($85,000). The Husbands share of the antiques is estimated to valued at five thousand dollars ($5,000) and the Wife's share at fifteen thousand dollars ($15,000).
The Husband is awarded the 1993 Honda and the Wife the 1998 Jeep automobiles. Each party shall retain the balances in their respective bank accounts and the Wife shall retain her jewelry.
DIVISION OF SECURITIES
The Husband shall transfer to the Wife the lump sum of two million dollars ($2,000,000) by August 1, 1999. All other securities owned by the Husband shall remain his separate property as part of this equitable division. The Husband is entitled, by stipulation of the parties, to a credit of twenty-five thousand dollars ($25,000) for money advanced during the trial.
RETIREMENT ASSETS
The Husband shall transfer to the Wife by tax free rollover or qualified domestic relations order all of his Goldman Sachs IRA.
LIABILITIES
Each party shall be responsible for their own liabilities as shown on their respective financial affidavits. The Husband shall be responsible for all pendente lite orders through June 30, 1999.
COUNSEL FEES
The Husband shall pay to the Wife as counsel fees the sum of fifty thousand dollars ($50,000) by August 1, 1999. In addition, CT Page 6612 the Husband shall pay the balance due counsel for the minor child by the same date.
TAXES
The Wife shall be entitled to the dependency exemption for the minor child.
MISCELLANEOUS
Counsel for the Husband shall prepare the judgement file, have it certified by Wife's counsel as well as counsel for the minor child, and file same with the court within 30 days. Each party shall promptly sign any and all necessary documents to effectuate the orders entered herein.
CUTSUMPAS, J.